## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| WARRIOR ENERGY SERVICES CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-10-0961-HE |
| LAST RUN, LLC, | ) ) | |
| Defendant. | ) ) | |

## ORDER

Plaintiff Warrior Energy Services Corporation d/b/a Bobcat Pressure Control ("Warrior") filed this action against defendant Last Run, LLC ("Last Run"), asserting claims stemming from Last Run's alleged failure to pay Warrior for services, materials and equipment provided to Last Run. Last Run filed the motion presently before the court [Doc. #15], seeking to dismiss plaintiff's action for failure to state a claim or, alternatively, to compel arbitration and stay these proceedings. The motion is now at issue.

Last Run argues that a valid and enforceable arbitration agreement exists between the parties—via the Master Service Agreement ("MSA") entered into on March 1, 2010—and that plaintiff's claims are subject to it. Warrior argues that the MSA is not a binding agreement as it was contingent on future transactions which did not occur. It further argues that, even if the MSA is deemed to be valid and in existence, it does not apply to transactions like those involved here, which pre-date the execution of the agreement. For the reasons stated below, the court concludes Last Run's motion should be granted and the parties ordered to arbitration pursuant to the terms of the arbitration agreement.

## BACKGROUND

In its complaint, Warrior alleges that during the period February 15-19, 2010, it provided oil and gas-related services, materials and equipment to Last Run for which it has not been paid.[1] Warrior claims that it issued invoice tickets for these items and that the tickets made applicable the Warrior Energy Services Corporation Customer Agreement General Terms and Conditions—via the fine print at the bottom of each invoice ticket.[2] The terms and conditions provide that payment is due immediately upon receipt of the invoices or else subject to accruing interest. The terms do not include any requirement of arbitration. Last Run argues that the Warrior "general terms" agreement does not determine the present controversy, stating it did not receive those terms and conditions until the filing of this action and that the invoices were not contracts but merely receipts evidencing the services provided by plaintiff. Further, it argues the present dispute is controlled by the March 2010 MSA and its provisions for arbitration of disputes. According to the complaint, Last Run sought to commence arbitration in June 2010. Warrior then filed this case.

## DISCUSSION

---

[1] *Warrior seeks to recover $217,973 plus interest and costs.*

[2] *The language states, "The Services . . . related to this Field Invoice Ticket shall be governed exclusively by the Warrior Energy Services Corporation Customer Agreement General Terms and Conditions (the "Terms"), which are expressly incorporated herein by reference. The Terms are available upon request and at Warrior's website (http://www.superiorenergy.com/subsidiary/warrior/). Acceptance of the Terms shall be the earlier of the date of signing above or by acknowledgment as described in Section 1 of the Terms, including without limitation by beginning performance."*

Under both federal and Oklahoma law, the arbitration of disputes is favored. Once an agreement to arbitrate has been established, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Nat'l. Am. Ins. Co. v. SCOR Reinsurance Co., 362 F.3d 1288, 1290 (10th Cir. 2004). In determining whether an agreement exists at all, the general rule is to apply ordinary state-law principles governing the formation of contracts. Summit Contractors, Inc. v. Legacy Corner, L.L.C., 147 Fed. Appx. 798, 800-01 (10th Cir. 2005) (unpublished) (federal courts "should apply ordinary state-law principles that govern the formation of contracts" when determining whether a valid agreement exists) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Under Oklahoma law, "the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties." In re Kaufman, 37 P.3d 845, 853 (Okla. 2001). "If a contract is complete in itself, and when viewed as a totality, is unambiguous, its language is the only legitimate evidence of what the parties intended. That intention cannot be divined from extrinsic evidence but must be gathered from a four-corners' examination of the instrument." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 546 (Okla. 2003). "Both the [Federal Arbitration Act] and the [Oklahoma Uniform Arbitration Act] require the courts to honor private parties' agreements to settle their 'controversies' in the arbitral forum." Oklahoma Oncology & Hematology P.C. v. US Oncology, Inc., 160 P.3d 936, 947 (Okla. 2007); see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

Here, Warrior argues there is no agreement to arbitrate because the MSA is not yet valid and in effect. It contends the MSA "merely sets out the rules" for future transactions,

but did not come into effect because a condition precedent upon which the agreement was contingent—some future performance resulting in a new Service Order—had not occurred. It relies on <u>Matte v. Zapata Offshore Co.</u>, 784 F.2d 628 (5th Cir. 1986), which involved a master service agreement that the court concluded was not binding until there was a subsequent offer and acceptance of an individual work order.

While the parties could have made the effectiveness of the MSA wholly contingent on some future circumstance, the court concludes they did not do so here. To be sure, some portions of the MSA—indeed, the bulk of them—apply to future contingencies and dealings.[3] However, the parties also evidenced an intent that the agreement be immediately effective for at least some purposes. It provided for a specific term commencing on March 1, 2010, rather than some indefinite date tied to future transactions. It recites, in present tense language, that it "constitute[s] a complete allocation of risks between the parties." MSA, ¶8. Arguably, that provision could be understood to relate only to risks arising out of agreements otherwise within its scope. However, at least one provision (and, coincidentally, the same one pertinent to other issues raised by the motion) clearly evidences a present intent to address circumstances other than future work orders. The arbitration provision states the parties agree to submit all disputes "of whatsoever kind or nature . . . arising out of this <u>or any other agreement between the parties or their affiliates</u>" to arbitration. MSA, ¶16

---

[3] *Paragraph 1 of the MSA states it applies to "all Service Orders, purchase orders, work orders and any other agreement <u>arising after the date hereof</u> . . . ." (emphasis added). Other paragraphs set out warranties which will be deemed to apply to future performance, insurance to be maintained by the parties, and other matters.*

(emphasis added).  The court concludes, from the use of terminology consistent with a present agreement, the legal standards applicable to such issues,[4] and the inclusion of language indicating a present intention to apply at least some of its provisions to all <u>other</u> agreements between the parties, that a binding agreement was entered into as of March 2010.[5]

Having determined that the MSA constitutes a binding agreement, the question then becomes whether plaintiff's claims fall within the scope of its arbitration provision.  Whether an arbitration clause applies to a particular type of controversy is a question for the court.  <u>Cummings v. FedEx Ground Package Sys., Inc.</u>, 404 F.3d 1258, 1261 (10th Cir. 2005).  In order to determine if such a clause does apply, the court looks at the scope of the arbitration clause.  <u>Id.</u>  "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  <u>Id.</u> (quoting <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 225 (2d Cir. 2001)).  Both the federal and Oklahoma policies favor arbitration.  <u>Nat'l Am. Ins. Co.</u>, 362

---

[4]<u>In re Four Seasons Nursing Centers of America, Inc.</u>, 483 F.2d 599, 603 (10th Cir. 1973) ("[C]ourts generally look with disfavor upon . . . contract stipulations and will not construe them as conditions precedent unless required to do so by the plain and unambiguous language of the contract.");  <u>M.J. Lee Const. Co. v. Okla. Transp. Auth.</u>, 125 P.3d 1205, 1215 (Okla. 2005) (Stating disinclination to "construe contract provisions as conditions precedent unless compelled by the plain language of the contract.").

[5]Last Run suggests that plaintiff has also argued the MSA is unenforceable because of lack of consideration. [Doc. #24, p. 4].  It is not clear that plaintiff made such an argument, but it would, in any event, be unavailing.  The agreement reflects mutual promises which constitute consideration.

F.3d at 1290. Any ambiguity "falls on the side of the existence of an agreement to arbitrate." Rogers v. Dell Computer Corp., 138 P.3d 826, 830-31 (Okla. 2005); s*ee also* City of Muskogee v. Martin, 796 P.2d 337, 340 (Okla. 1990) ("[A]rbitration should be allowed unless the court can say with 'positive assurance' the dispute is not covered by the arbitration clause.").

Here, the arbitration clause of the MSA is undoubtedly broad. As noted above, the parties "agree to submit all disputes of whatever kind or nature . . . arising out of this or any other agreement between the parties or their affiliates." Such broad arbitration language in the MSA encompasses the current disputed issues "despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement." *See* Zink v. Merrill Lynch Pierce Fenner & Smith, 13 F.3d 330, 332 (10th Cir. 1993) (construing a broad arbitration clause to encompass disputes regarding transactions that occurred prior to the clause's execution).[6] While much of the MSA is directed to defining future or prospective dealings between the parties, the arbitration provision is not so limited. Applying the applicable standards set out in Cummings and other cases, the court concludes the present dispute is within the scope of the parties' agreement to arbitrate.

## CONCLUSION

For the reasons stated, defendant Last Run's motion to dismiss and/or compel arbitration [Doc. #15] is **GRANTED** as follows: the parties are ordered to arbitration

---

[6]*To the extent plaintiff relies on arguably stricter state standards for determining retroactive application of an arbitration clause, they are not controlling here.*

pursuant to the MSA and further proceedings in this case are **STAYED** pending completion of the arbitration process. 9 U.S.C. § 3. The Clerk of Court is directed to administratively close this case in his records. Either party may move to reopen this case upon completion of the arbitration for such further proceedings in this court, if any, as may be appropriate. If no party has moved to reopen this case within **thirty (30) days** of completion of the arbitration proceeding, this case will be deemed dismissed with prejudice.

      **IT IS SO ORDERED**.

      Dated this 1st day of December, 2010.

JOE HEATON
UNITED STATES DISTRICT JUDGE